and Lake County, Illinois Board of Review. On behalf of the appellant, Mr. David Audley, on behalf of the appellee, Ms. Farrah Horry, on behalf of the appellee, Lake County, Illinois Board of Review, on behalf of the Property Tax Appeal Board, Mr. John Schmidt. Both sides ready to proceed? Then you may proceed when you're ready. Good morning. May it please the Court, my name is David Audley and I represent Onwentsia Club, a private golf club located in Lake Forest, Illinois that has operated as a private golf club for over a hundred years and the appellant in these proceedings. Your Honors, this appeal arises from a determination from the Property Tax Appeal Board upon review from the Board of Review of Lake County where the PTAB, if I could call it that, in shorthand, determined that land that was located below certain structures, I guess we'll call it that, some are parking lots, others vertical improvement, on three parcels of land located at Onwentsia Club were not entitled to open space treatment under the open space law located at 35 ILCS 210-155D. There's a specific provision that was added to that law approximately 16 years ago which provided that if land, conserved landscaped areas, and it says expressly such as public or private golf courses, that they should uniformly receive open space treatment. Counsel, the threshold matter, what is our standard of review when reviewing the findings of the Board? Is there a deferential standard being given here? I don't believe so, Your Honor. I noted in the briefs that the PTAB had taken the position that there was some deferential standard because their position is that this is a mixed question of fact and law. The club takes the position that it's de novo review because this is simply a question of law. It's an interpretation of this statute and its application to undisputed facts. I'd only like to add, Your Honor, that at page 9 of the PTAB's brief, they do say there are no disputes of any fact, let alone material fact. Indeed, that was the case both before the Board of Review and the PTAB. So it's an issue of statutory construction? Yes, Your Honor, that is our position. The three parcels in question had previously, for 15 years, been treated by the assessor for Lake County as if the land underneath these structures were treated as if they were open space land, a uniform valuation. Now, there was some information, possibly evidence by the assessor, that in 2006 they decided to relook at and make some changes in how certain things were evaluated. And they have the right to do that, don't they? Unless there's some preclusion, and I'll get to that next. But the assessor has the right to determine how things will be assessed, correct? Your Honor, that is correct. We don't take the position that the assessor is hamstrung by a previous way that they had viewed things. However, we do think, at least, it's probative of their interpretation of the statute, and we simply wanted to point out that this, obviously, from our perspective, our client's perspective, sudden change. So, obviously, as you can see, there's no waiver or, shall we say, estoppel argument, for lack of a better word, involved here? I don't believe I can, certainly under the law, can make that argument. Simply that I think we can look at the history of the way that the person who is charged under the Constitution and the statute to interpret had interpreted it in a way that we're promoting on appeal before Your Honors this morning. As the briefs lay out, Your Honors, the PTAB's decision found that, under these three PIN numbers, that the land underneath these structures were not entitled to the open space treatment because they were not actually used to conserve landscaped areas. I believe that's the, if you will, the main premise of the PTAB's decision. And in our briefs, as we've laid it out, we've pointed out that the open space treatment and the statute itself provides no such limitation, either literally or inferentially, that you have to distinguish between what I, hopefully not facetiously, will say are the blades of grass, the fairways, the tees, the greens, etc. And any of the other land underneath any structures that might constitute either a public or private golf course. So the board seems to be taking the position in the collector that if there's an improvement on there or some building, then it can't be considered open space for purposes of the statute. Is that basically what they seem to be saying? It is what they seem to be saying. However, they're, and as we point out in the appendix where you can see the delineation of certain, of all of the structures on Onesia Club, they didn't say for all land that is below all structures located on the club that they weren't going to give open space treatment. Originally, there were four objections to four tax parcels. One of the tax parcel objections, however, fell by the wayside during the appellate process. And on that parcel, for example, there's a maintenance shed. There are other structures, but they didn't appeal from, and the assessor gave open space treatment, finally, for those structures. And those structures, again, for the record are what? Your Honor, if I may just cite to the appendix because it's laid out. It is on page 828 of the appendix for the record. It includes the maintenance shop, the maintenance office and garage, a wash bay, a halfway house, and certain driveways, as well as an old writing arena that they used to store equipment with now. Okay. So which specific parcels did they not grant the open space exemption to? And I'm going to refer, Your Honor, to the last three digits because the prefix numbers are the same. It's 003, 006, and 007. And they would be what? They would be, for 003, a driveway, what's located on top of them, Your Honor, if that's the question. Right. They are a driveway and parking lot, a clubhouse, then two tennis courts, and a tennis hut. For 006, it's the driveway as well because the parcels don't, the tax parcels don't neatly encompass individualized structures. They extend beyond each of the tax parcels. For 006, it's a driveway, parking lot, golf learning center, the caddy shack, the clubhouse, and a pool deck. So they did not grant the status, exemption status to the clubhouse either? That's correct, Your Honor. And for 007, the third parcel, it is comprised of a parking lot, a platform tennis court, a house for the tennis, and then a small dorm. And that's the last parcel, Your Honor. You mentioned a halfway house and a small dorm. What are those? The small dorm, Your Honor, I'm not a member of the club, but I physically have been there, and this is part of the record. The dorm is utilized for people who seasonally want to work there and then work in Florida in the winter and want temporary housing, so they're allowed to stay in the dorms to work the golf course and the ancillary facilities as well, including the clubhouse. So the statutory authority says land is not considered used for open space purposes if it is used primarily for residential purposes. Are they hanging their hat on that particular residential purpose authority in this particular case, then, especially where you've got the small dorm? I don't believe so. I will say that in the pleadings, both below and on appeal, there was a passing reference, that's my reference to what I believe is a passing reference, that says at least the dorm should not fit under the open space because, Your Honor, of the exact definition of what doesn't constitute open space. But certainly if you look again at the appendix page that I referenced, 828, the dorm takes up all of 4,470 square feet of these three parcels. Those total three parcels, over 300,000 square feet to them. So on a percentage basis, it couldn't possibly be that this small, used as a small dorm, it could suggest that these areas as a whole were primarily used as residential purposes. Do the parcels have to be taxed uniformly across the base of a parcel? So this would be 007. The dorm is on 007. Would the entire parcel have to be one amount or could a third of it be taxed a different way? I mean, what is the authority of the assessor-collector to do that? Well, I believe the authority that has been cited primarily by the PTAB in their appellate brief is citing two other statutes, and cases that talk about charitable exemptions, for example, or if a governmental entity like the City of Chicago owned a property, and they're pointing out that under those statutes you can have a bifurcation, if you will, of assessment. However, we've pointed out in our briefs and the case law that when you've looked at the open space statute, specifically in the fact that the preamble to the subsections of the open space statute says it has to be uniformly, if you determine that it fits one of the purposes below, it has to be uniformly assessed at open space. You can't bifurcate. And we've cited the cases that stand for that proposition. Knox County Board, the Lake County Board of Review versus PTAB, Illinois Country Club versus PTAB. All of them stand for the proposition, at least as to the open space statute, that it has to be uniformly assessed across those PIN numbers. Counsel, how are you asking us to interpret it, interpret the statute as it applies here to the golf course? The statute says conserve landscape areas. The statute, as everyone knows here, also refers to golf courses, you know, as constituting at least ostensibly a permissible use for exemption purposes. So how do you want us to interpret the statute? Your Honor, I want you to interpret the statute that if it's a golf course, public or private, and there are other structures on the property that are ancillary to or provide for the function of the golf course as well, that the entirety of that club, whether it's public or private, should be entitled to the exemption. And the reason for it, Your Honor, from a legislative history perspective, if I might add, and then try to answer your questions, Your Honor, in that regard, is as in the Knox County case, and as we've cited in our briefs, the legislative history absolutely is clear that says, look, the evil, if you want to call it that, that they said they were trying to address was to have residential development take up any possible open space. So the idea was let's exempt out public and private golf courses, golf clubs. But it does say golf courses, Your Honor. Absolutely a statute. Because we don't want the owners of either these public or private facilities to otherwise sell out to a real estate developer, and so then you have just single-track homes. I understand that. And I think, of course, we'll ask the State and the Board. I think the statute does not say, and it could have said, land is considered open space only if it's a landscape area. So we'll get into it, but I have a hard time buying the fact that you put any structure on a golf course, automatically you use the exemption for the land under that. However, I do have a question for you. How does, and I think you might be on to something intuitively, does it support the golf course? Some things are necessary appurtenances and adjuncts because maybe you wouldn't have a golf course up in Lake County, a very plush, nice golf course, if the golfers had a change in their car. They're probably going to want to have a clubhouse somewhere there. So that may be a hard sell. On the other hand, let me ask you what I think ostensibly is a hard sell in your proposition. How does a tennis court become a necessary part and support a golf course? Maybe I'm missing something. Your Honor, if you take the position that the statute will require, either widely or expressly, that the structure atop the land in question has to be functionally related to the operation of the golf course. And how is it functionally related? I'm out there playing tennis and I'm waiting for the golfers. How does that have anything to do with the golf course? I'm not going to argue the point with you, Your Honor, on that perspective. I can only say that those facilities have been there and the assessor agreed that they are normal accessory, if you will, structures to a full-fledged golf club. Is your position that was stipulated too? No. The assessor simply said that he agreed under direct examination by myself in front of the Board of Review. He said that it is certainly common to see a clubhouse, to get to Justice Hudson's point, to see driveways for ingress and egress, and to see, including swimming pools, tennis courts, and as you, I presume, Justice Hudson was saying. Could it be a fact question in the future as to what functionally supports a golf course and what does not? How big can your pro shop be? Can you sell other things? I mean, where do we draw the line? And, Your Honor, that's what we raised in our brief, that if you get to a functionality litmus test, if you will, for example, and this is true on any plush or non-plush public or private golf course, you typically have pretty large sheltered areas, either within the 18 holes or at some place, either for shelter from rain or lightning or whatever. Are we then to say that that, while it's not functionally necessary to have people up and down the fairways or playing golf, where would you draw the line? That's my question. And I think, Your Honor, the way that you avoid drawing any kind of line like that is from our view of the statute. And what the evil was, I'm using that word because that's what the word was used in the legislative history that was meant to try to avoid, was residential development, is the fact that you may have a clubhouse. I would assume it was also designed to negate commercial development. I assume, Your Honor, as well. So that's my question. I can see that you're not going to put houses on the back nine, but at what point does it begin to be a commercial operation? How large of a banquet hall is part of a clubhouse for the functionality of a golf course? How large can your pro shop be? Can you put in, you know, a store to sell golf equipment that's the size of golfsmen? That's my question. How do we say to future boards that are going to look at this, what are your factors? What is enough? What is too much? And, Your Honor, I don't know if I have an absolute answer for how you would make those delineations. I will simply say that the statute gives the answer from Omnissia Club's perspective. And it tells you what is not open space. And what it says is not open space if it's primarily used for residential development. So respecting Your Honor's point that it seems almost intuitive that they also don't want commercial development, the focus was on residential development. And that's different from the other statutes. It says primarily. Arguably, if you want to construe the statute literally, if residential purposes alone a building would take it out of the operation of the statute, why use the word primarily? It would be redundant and superfluous, wouldn't it? It would be, Your Honor. I mean, I can't, I agree with that, Your Honor. And, again, I think they used that verbiage because that was the reasoning behind it to stop residential development. At least that's what the legislature says. We're really a golf course. We've got a thousand homes out here, but we're a golf course. That's right, Your Honor. As we said, look, you may understand that some golf courses, public and private, really are just lining the fairways with all. And that's really a real estate play, if I could talk informally. It's not really a golf course where it's an open golf course, open space, that you have structures in the front. All of these structures are right in the front as you enter. As you, for example, they don't even give open space. Does that make a difference where they are? Well, I think, Your Honor, it does from. . . I'm guessing your halfway house isn't up front. That's correct, Your Honor. That's absolutely correct. But I think it does in a practical sense because it shows what you need to operate and move into the golf course. I can understand that. How do you then draw the line as to an opulent Taj Mahal, you know, clubhouse or something? Well, I don't think. . . I don't think. . . It's not the. . . Excuse me. It's not the opulence. My point is if you call it a clubhouse and it's a banquet facility for 700 people, I'm not sure that that would enhance the functionality of a golf course. And so what I'm asking you is this is de novo review, statutory construction. How do we. . . The answer from the club, Your Honor, is you don't even look to the functionality. That as long as, because the way the statute was written and the General Assembly is free to change it, is it primarily used for residential development? And if it isn't, then it fits the open space criterion. But again, the rule of practicality would be you look at it and say, so you're going to have to make some determination, is it primarily residential real estate or not? You can do it either on a square footage basis. You could do it on an aerial map. You could see that. Does residential real estate predominate the club as a whole? I'm not sure that I would go down the road of functionality. I don't know about that term. In my mind, what we're getting toward is does the improvement serve to facilitate the golf course in its essence as a golf course? Clubhouse, maintenance shed, parking lot, I think clearly would facilitate and allow the golf course to function. A banquet hall and a tennis court, arguably, ostensibly, does not facilitate the existence of the course because the course could operate without those things, put it in that. Certainly the golf course could operate without those items, Your Honor. I don't disagree with that. Well, isn't that what you should be zeroing in on, whether or not it's necessary to the operation of the course? The initial argument that we've made on behalf of Wencia Club is that you have to follow the statute unless you believe it's ambiguous. And, of course, that's for Your Honors to determine. But if you follow the language and it defines, this is actually a statute that gives you the definition of what is not open space. So, arguably, we don't have to go down the road of whatever verbiage we use, functionality or necessary for the operation of the course, or whatever is the appropriate litmus test. It says it is open space. What is not open space is if it's primarily used for residential development. The General Assembly is free to change things. And they have, for example, we cited the Consumer, Illinois case with the dam that created the lake. The General Assembly then took it up and amended the statute and provided that if it's a commercial operation, then it can be assessed separately. But they have done nothing in regard to public and private golf courses, and at least from a Wencia Club's perspective, how the statute should be written. Is this a case of first impression? I will say that I don't want to speak for counsel. They'll certainly speak for themselves. We can't find a case that's exactly on all fours. Knox County talked really about a nine-hole golf course where the appellate court reversed an additional assessment on the tees and greens, but really didn't get into the land underneath the structure, Your Honor. All right. I think I've watched everything all the way on in my time. Thank you. We have a chance for rebuttal. Good morning, and may it please the Court, I'm John Schmidt on behalf of the Property Tax Appeal Board. I want to express some disagreement with one thing that Mr. Avley said. The statute does exclude primarily property that is used primarily for residential purposes, but that exclusion does not mean that all property not used primarily for residential purposes is included. It's only to make it clear that if the land is used primarily for residential purposes, that's excluded. Is the PTAB in any way relying on primarily residential purposes in this disposition? No, not one bit. What it is relying on is the fact that none of these improvements conserve landscaped areas. Counsel, just to clarify, is the Board taking the position that any improvement structure on the golf course excludes the land underneath that from being considered open? Not necessarily every one, but... Well, I don't know how you could take that position. The Board is focusing on the conserve landscape areas language of the statute. And these improvements, and I believe even those that facilitated the golf course, they did not conserve landscape areas. And that is why the Board ruled that the open space provision would not apply to that. But you say conserve, so you're not... I'm not trying to... Well, I am trying to pin you down. You're not taking the position, the mere fact that some structure or improvements on the golf course, that parcel of land automatically is outside the statute, are you? No. No. These improvements are not, however, on the golf course. They may have, some of them may very well and do facilitate it, but under the statute, the PTAB does not, the way the PTAB interprets the statute, and we believe this is consistent with applying language. Even if they facilitate the golf course, they don't conserve landscaped areas. And one thing I would point out... Well, how do you operate a golf course without some of these things? You do have a golf course without these things. You do need those things, but the legislature did not choose to exempt those things. And those things we're talking about, like the clubhouse, the parking lot, if this golf course is sold as open space, if it's sold as a golf course, something like this club, building improvements like this clubhouse, these parking lots, they add tremendous value to it. And the PTAB found that the legislature did not intend to include that value within the open space assessment. Well, rather than getting off on values, the statute, as you know, it's undisputed, says, conserves landscaped areas such as private or public golf courses. They say an example of a golf course. So what is a golf course? Do you have a golf course without a parking lot? Do you have a golf course without a clubhouse? The argument is you might be looking at the word conserves way too narrowly. I don't think so, Your Honor. You can't physically have a golf course without those things. As a practical matter, it's going to be difficult, of course. But the wording of the statute there focuses on the golf course. And a parking lot is not a golf course. A parking lot also does not tend to conserve landscaped areas. Well, when you talk about the statute, you were talking about residential purposes. Land is not considered used for open space if it is used primarily for residential purposes. Under your interpretation, a building there that would be a residence would automatically take it out of the operation of the statute. A building that would be a residence? Primarily a residence, yes. That takes it out. Okay. But a structure there would not necessarily take it out. So you seem to be saying it's only the land itself. Anything connected to the course, like a parking lot, like a maintenance garage, like a candy shack, cannot receive the exemption, correct? I wouldn't say per se, but it's going to be very difficult to establish the exemption for structural improvements. I don't think the board set it per se a rule, but it's going to be difficult. The Knox County case indicates that some improvements actually on the golf course, such as the greens, the teeing areas, which have some improvements, those would get open space exemption. They're physically out of the golf course. Well, you can't have a golf course without a tee, so I think that's sort of a no-brainer, isn't it? But also, according to the statute, if we're applying the language of the statute, the reason that would get the open space assessment is it is physically out of the golf course. It is there out of the golf course. What are the boundaries of a golf course? It's the area, it's the playing area. It's the area in which the participants are playing golf. Well, do you tax the water holes? They're not supposed to play there. What about the out-of-bounds area? That is physically still part of the golf course. The out-of-bounds area, it depends. The water, I mean, a water hole is not really part of the course. I mean, I have someone asking you facetious questions because my question is, where do you draw the boundary? Is it where the golf course, the access to the course meets the street? Does that count? Do we expect people to trespass in order to get to a golf course that is protected under open space? So my question is, you're asking us to draw somewhat arbitrary lines that this is a golf course, but this part over here is not. Well, yes, but I think that's what the legislature did. We have a courtroom here, but we also have an outside entrance. We have other walls, but technically all we really need is these four walls, and actually everyone else could stand. We just need two chairs. So my question is, how much more of this land is a golf course? None of the land that the PTAB denied the exemption to is part of a golf course. I get that, but my question to you is, how much, where would you have drawn the lines? Isn't the decision of the board here somewhat arbitrary? I mean, either it's a golf course or it's not a golf course. Do we have three tiers of land, that which is the nine or 18 holes or 27 holes, whatever you have, and then there's sort of this accoutrement around it. It's, you know, other grassy areas, and then there's the third tier where the board has said this is clearly not. I mean, what do we do about that land in the middle? Is the assessor going to come back next year and say, well, that's really not part of a golf course either? Maybe that wasn't clear as mud, but you see what I'm saying? You've got these three parcels, and you said that's not open space. We all agree that the 18 holes is a golf course. What about the rest of the land? Where does that fall under your interpretation of the statute? Well, under our interpretation, I think it's simple. It's not part of a golf course. Then why didn't you tax that at a higher rate? Why didn't the board tax that at a higher rate? I don't know whether, well, what, I'm sorry, Your Honor, what land are you talking about? Well, you know, that's why I asked you in the beginning, what is a golf course? It's just the 18 holes. I've never seen a golf course where literally your spot goes right up to somebody else's land. There's usually land around it, some buffer for out of bounds, et cetera, whatever. So that's really not part of the golf course, should that not be taxed at a higher rate, and wasn't the board somewhat arbitrary in what it decided to tax at a higher rate? I mean, you're asking us to apply the statute, and you're saying just a golf course is exempt. Right. What about the land that doesn't have asphalt on top of it? If it's not part of the golf course, that would not get the favorable exemption, unless it otherwise, if it can otherwise qualify as open land, it could. And how would that be? Oh, if it conserves landscape areas. The statute says conserves landscape areas such as golf courses. Right. So there would be other, there would be another basis for it. How does? Potentially. If you're going to conserve a golf course, isn't it intuitive to me, a building that houses all of the equipment used to maintain a golf course? No. That doesn't conserve it. Well, that's not an issue here, because I believe that was dropped from the assessment, and that never went up to the PTA data. You're correct. So that was never included. But there is another statutory section at A, is actually and exclusively used for maintaining or enhancing natural or scenic resources. And that may be why it was dropped from the appeal. All right.  And that could very well apply, but that was not before us either. The clubhouse would not be actually and exclusively used for maintaining or enhancing natural and scenic resources under the PTAB's view? I don't think a clubhouse would generally be. A maintenance shed, perhaps. A maintenance shed I think you'd have a very strong, you'd have a strong case for. But the clubhouse, I don't think. They're supposed to change their clothes. Well, they would. If they changed their clothes, they would change it in the clubhouse. Well, that's what I'm saying. Having people changing their clothes on the course would not necessarily enhance the natural or scenic resources in my mind. We won't go down that road. But I'm not sure how the place that somebody changes clothes, how that would have anything to do with enhancing natural resources. We're talking about enhancing things like grass and trees. And I don't know how a place, I don't think that a place where people change apparel would have anything to do with that. And this does point to one other thing, though. We don't know exactly what that clubhouse was used for or what portions of it. I mean, we have an idea, but there are no specific, there's no evidence in the record saying this part of the clubhouse was devoted to golf. This part was devoted for banquet facilities. And there's really, we don't have evidence as to the other facilities, too. And it's the YMCA club's burden to produce evidence like that. Counselor, one final question on statutory construction. If we are to read and apply the plain language of the statute, it says, the exception is, conserves landscape areas such as a public or private golf course. If the legislature wanted to confine it to your construction being the land, why didn't they say conserves landscape areas such as the land on a public or private golf course? And we wouldn't be having this dispute. Well, the rule is. They use golf course, not land on a golf course. Well, I mean, and that's why I said you could have some structures that are physically on the golf course. And that's why I said the board did not, the board did not create a per se rule. You could have, I think it's conceivable that there could be structures on the golf course that would, you know, to which an open space assessment might apply. So would you hand this case back to the trial court to decide? No. No, I don't. Well, it would be to the PTAB. This came directly from the PTAB. I don't think so because, again, it was YMCA's club burden, YMCA club's burden to present that evidence, and they didn't do it. PTAB based its decision on the record that was before it. And we believe that record was inadequate to establish entitlement to an open space assessment here. Anything else? No. I should leave. I'm sorry, Your Honor. I was going to say I should leave some time to Ms. Ory, too. You've already, well, I think it lapsed all the time, but would you like to address your argument? I just have a couple points. Please. Good morning. Good morning. Good morning again. It's not Groundhog Day. I'm here again talking about property taxes. Surprise, surprise. Hopefully I can clear up a few points from Appellant's argument and from Mr. Schmitt's argument. I represent the Lake County Board of Review and the Lake County Chief County Assessment Officer, Marty Paulson, who in 2006 decided to take this departure from the historical practice, which in our view was incorrect, and now has decided to interpret the statute correctly and give only that land which meets the requirements from the open space statute, give that land the preferential designation. To clear up a couple points, there are a number of different parcels on Wensea Club. We're looking at approximately 131 acres. Only three of those acres were determined not to be open space, and it was only those acres that were underneath the clubhouse, the swimming pool, the tennis courts. The maintenance shed which counsel spoke of, which they did not appeal, that parcel actually got 100% open space designation. So it's really not about just a building and a golf course. We're looking at the statutory language. We're looking at... So you're conceding the mere fact that there's a structure on the land... Correct. ...doesn't cause the land to be outside the exemption of the statute. That's right. That's correct. And that's what was done by the Chief County Assessment Officer. What I'm not conceding is if Wensea Club or any other place decided to build a golf galaxy in the middle of their golf course and said, this conserves landscape areas, we're using this only for golf purposes, that wouldn't qualify under the statute. So how do we then, the question we've been dancing around all morning is, how do we determine, as you conceded, that a building could ostensibly still qualify for the exemption? That's right. So how do we determine which, quote, unquote, improvements in buildings qualify? How do we define that? What's the standard? What's the test? The standard, and the standard that my client used was simply looking at the language in the statute. What conserves the landscaped area. So, again, it has nothing to do with just an improvement being on the golf course. He determined, and the Property Tax Appeal Board agreed, that the clubhouse, which is in excess of 200 square feet, does not conserve the landscaped area. So is it the size of it, or are you saying a clubhouse does not have to be part and parcel of a golf course? Well, I'm not saying that. I will agree with Mr. Schmidt, who said, we don't know which portions were overused for golf purposes. We don't know if this portion was a store, this portion was a check-in place, this portion is where people change clothes. And, again, that was the appellant's burden to bring forth to the Property Tax Appeal Board. So he used his discretion, which pursuant to 10-160 of the code, he's allowed to do, and literally determined in his discretion, again, what was used to conserve the landscaped areas as a golf course. What was the criteria that was used? I can't speak specifically to it. I've had a number of conversations, and on the record, he used the mapping tools, and, again, he gave them the maintenance shed, gave them the things that were used to support, conserve, enhance the golf course. Did not give open space to the land or the pool. Did not give open space. Right, but you said that, but my question is, what criteria other than mapping? What was it about the clubhouse? What is it about the pool that led to the conclusion that this does not conserve landscaped areas? I think the mere fact that it was a pool. It was a tennis court. It has nothing to do with conserving the landscaped area of a golf course, and it is determination. So it's related to the fact that it's a golf course. Correct. So it has to enhance the golf function of this area. Right, right. And simply using the statutory language. But the statute says conserves landscaped areas, does not say is a landscaped area. And other than the maintenance shed, where we'll assume there are golf course maintenance implements, everything else that was taxed is either green, flowered, or treed. That is correct. And it's all taxed. Right, I'm sorry, taxed as other than open space. Right, correct, correct. So speaking from my client's perspective, that is what we use. I know counsel went to great lengths in his reply brief to talk about that my client testified, this is what we do for corporate parks. When a corporate park that is more than 10 acres applies for open space, they do not get open space on the parks that are the buildings that are the improvements. They get open space on whatever the landscaped areas. And he explained that that is not relevant. But when we look at the case law and look at the uniform rate, we look at open space as open space. So unlike how counsel interprets the case law that says once anything has been determined, it's a golf course, so everything has to be open space, sort of an all or nothing approach. That is not how we interpret this statute in the case law, that we interpret the uniform rate as uniform rate per other golf courses, not within the actual golf course. And we do carve out, we've done that for years, we carve out what is actually used for open space purposes and what is not. And we think that that is the intent of the statute. And if there is nothing, again, I'm here talking about broadening the property tax, but there's nothing that would suggest that we can broaden this. Can I ask you, what is an open space purpose? The open space purpose is to, I'm sort of speaking informally, to conserve natural resources, and what does the statute say, to conserve landscape areas. Correct, correct. I mean, we seem to be saying, you know, it's yellow because it's yellow, or it's blue because it's blue. My question is, why isn't a beautiful pool conserving a landscaped area? Why isn't a clubhouse that rivals Augusta enhancing or conserving the landscaped areas? And I'll just throw that out to you, or St. Andrew's Golf Course in Scotland. I mean, why, what's the criteria? When does it conserve and when does it not? And that's what I'm looking for you to draw a line. I don't know if I can answer that specifically today. But I do think this is difficult. But I think the opposite conclusion, that everything should be open space. I don't disagree with that. But you've already done that. You've applied some criteria in determining that the maintenance building doesn't count, but the clubhouse does count, the tennis course counts, the pool counts. What was the criteria that was applied to make that determination? Is that a little clearer? The use, I understand, I understand. Okay. The use of the parcels and the use of the improvement in its relationship to the otherwise open space purpose. And I think that that's what the two of you are asking. Okay. That's all I have. Do you have any other questions? Thank you very much. Thank you. Any wish to reply? A classic statement briefing. I'm trying to make it real. First, to address the point about corporate parks, the difference obviously there is that there is no statutory recognition in the open land statute to say let's give open space treatment to corporate parks. It does say golf courses, public or private. Secondly, Mr. Paulson testified at hearing that what he did was take aerial photographs and try to sketch out from the aerial photographs what the actual physical buildings were or the driveways were and kind of sketch them out on his tax maps. That was it. I asked him, what criteria did you utilize? I used the outlines of the buildings, not looking at the functionality. For example, again at page 828 of the appendix, the parcel that they dropped and went back to open space, it not only has a physical maintenance shed, it's the majority of the 76,000 square feet is made up of driveways, 34,298 feet. He just physically outlined, well, there's a driveway. So respectfully, there was a – Driveways for the golf carts or what are they being used for? Driveways to go in and out of the maintenance shed. Okay. I'm sorry, Your Honor, there's a separate – In and out of the maintenance shed? Yes, Your Honor. He excluded those? He allowed those to be open space. Yes, Your Honor. You know, as to the burden of proof or when we were at these hearings, neither the Board of Review – well, the Board of Review was the appellee, if you will, at the PTAB level. PTAB was the decision maker at that level. So there was really no position. But the Board of Review didn't say, oh, you haven't provided enough evidence as to functionality, because the issue of functionality or relation wasn't even in the PTAB's eventual decision. It wasn't even part of the criterion. It was simply their position, respectfully, for the Board of Review, if it doesn't – is it isn't part of the grass or the blades or whatever. It doesn't conserve open space. So we didn't have any target to hit. We gave all of the dimensions, all of what open – if I could talk informally about what those structures were that were on these parcels that they denied open space designation. Okay. I would answer any of your questions, but otherwise I believe I've touched on them. Well, I'll throw one last question out to you. Under D, it conserves landscaped areas such as public or private golf courses. Under your interpretation, it's really a golf club. That's true, Your Honor, yes. As opposed to a golf course. It is, and it seems to make sense, because if you're going to say what open space is not, and that's primarily for residential purposes, there must have been an expectation that structures were going to be on this thing, whatever it was, that was going to be given open space treatment. Why else would you say if it's primarily for residential? That connotes if it's not primarily for residential, but you could have some non-primary residential development, if you will. They must have believed that you needed structures, if you will, and ingress and egress and all of the other things that I said in the opening statement. Okay. Thank you. We'll be at recess. Thank you very much for your arguments.